McLEAN v. CITY STATE BANK OF MANGUM, OKL.

(Circuit Court of Appeals, Fourth Circuit.  December 19, 1913.)

No. 1,201.

1. BANKS AND BANKING (§ 87*)—ACTS OF BANK—CHARACTER OF TRANSACTION
   —LOAN FOR PURCHASE OF COTTON.

   Plaintiff bank having contracted to finance certain cotton purchases by G., a cotton broker, he purchased the cotton by buying bills of lading issued therefor. No bills were ever in G.'s possession, or under his control, he having transferred them to another bank as security for advances to pay for the cotton, which in turn transferred them to plaintiff's cashier and received from him plaintiff's draft for the value of the cotton, which draft was paid in due course. Prior thereto G. had contracted to sell the cotton to various purchasers, at an advance over the cost, whereupon sight drafts were drawn to the order of plaintiff bank on the several purchasers for the amounts payable by them, respectively, and bills of lading for the cotton attached thereto and forwarded through the usual channels to the buyers, and G's. profits paid by placing the amount to his credit. *Held*, that such transaction did not constitute a purchase of the cotton by the bank in violation of the Oklahoma statute, providing that no bank shall employ its moneys directly or indirectly by buying or selling, goods, wares, or merchandise.

   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 219; Dec. Dig. § 87.*]

2. JOINT ADVENTURES (§ 1*)—PARTNERSHIP (§ 20*)—INTEREST OF PARTIES.

   Plaintiff and the bank were neither partners nor joint adventurers in the transaction, and G. had no interest in the cotton which could be the subject of an attachment in a suit against him.

   [Ed. Note.—For other cases, see Joint Adventures, Cent. Dig. § 1; Dec. Dig. § 1;* Partnership, Cent. Dig. §§ 6, 7; Dec. Dig. § 20.*]

*For other cases see same topic &.§ NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

In Error to the District Court of the United States for the Western District of North Carolina, at Greensboro; James E. Boyd, Judge.

Action by the City State Bank of Mangum, Okl., against John D. B. McLean. Judgment for plaintiff, and defendant brings error. Affirmed.

A. G. Mangum and A. C. Jones, both of Gastonia, N. C., and Tillett & Guthrie, of Charlotte, N. C., for plaintiff in error.

Mason & Mason, of Gastonia, N. C., and Cansler & Cansler, of Charlotte, N. C., for defendant in error.

Before KNAPP and WOODS, Circuit Judges, and ROSE, District Judge.

KNAPP, Circuit Judge. The defendant in error, hereinafter called the "plaintiff," is a banking corporation located at Mangum, Okl. The plaintiff in error, hereinafter called the "defendant," is the sheriff of Gaston county, N. C.

On or about May 13, 1911, one O. L. Gibbon, a cotton broker of Mangum and customer of the plaintiff bank, bought at Lone Wolf, Okl., 250 bales of cotton which were delivered on that day to the Wichita Falls & Northwestern Railway Company, at Wichita Falls, Tex., for transportation. The carrier thereupon issued three several bills of lading, one of which covered 50 bales of cotton, marked "F. I. T. S.," consigned to "shipper's order, notify Vivian Cotton Mills, Cherryvale, N. C."

It seems that the Bank of Lone Wolf, through its president, C. H. Griffith, had advanced the sum of $14,921.20 to pay for this cotton, and had received the bills of lading issued therefor, presumably as security for its advances. In point of fact the bills were never in the possession of Gibbon or under his control. It was expected, however, that the plaintiff bank would finance the transaction, and an arrangement to that effect was carried out on the 15th of May, when Griffith went to Mangum, transferred the bills of lading to plaintiff's cashier, Percy Cornelius, and received from him plaintiff's draft for the amount above named, which draft was paid in due course by the St. Louis bank on which it was drawn. Prior to that date, though just when does not appear, Gibbon had contracted to sell the cotton to various purchasers for the aggregate sum of $15,518.98, or $597.78 more than the cost of the same. The 50 bales in question were sold to C. W. Cook & Co. of Spartanburg, S. C. Having satisfied Cornelius that these sales had actually been made and that the sums represented were to be paid in each case, Gibbon drew sight drafts to the order of plaintiff on the several purchasers for the amounts payable by them respectively, and delivered the same to Cornelius, who thereupon attached to each the corresponding bill of lading, which he had received from Griffith, and then forwarded the drafts for collection through the usual channels. At the same time Gibbon's profits were paid by placing the sum of $597.78 to the credit of his account.

The draft on C. W. Cook & Co. was for $3,076.66, the agreed purchase price of the 50 bales of cotton above described. The drawee having refused to pay this draft on presentation, it was duly protested

and returned to plaintiff, which has since retained possession of the same. It was not charged to Gibbon's account, and plaintiff has at all times been the owner and holder thereof. The reason for refusing payment was that in the meantime Cook & Co. had caused the cotton covered by this bill of lading to be attached by the defendant, as sheriff of Gaston county, in an action instituted by them against Gibbon on account of previous dealings with him, the nature of which is not shown by the record. Thereafter this suit was brought against the sheriff for a conversion of the cotton.

Upon the evidence submitted at the trial, of which the foregoing is a summary, the court directed the jury to find that the plaintiff was the owner of the cotton in question, and that the defendant had wrongfully converted the same, leaving to the jury only the question of damages, and a verdict was rendered accordingly.

[1] The first and principal contention of defendant is to the effect that plaintiff purchased this cotton outright by buying from Griffith the bills of lading issued therefor, that such a purchase is expressly forbidden by the Banking Laws of Oklahoma, and that consequently plaintiff acquired no title to the property. In our judgment this contention is clearly untenable. At best it takes a superficial view of what was done and ignores the substance and essential nature of the transaction. Gibbon had bought the cotton with the expectation that plaintiff would furnish the needed banking assistance. He bought it at Lone Wolf and got Griffith to advance the purchase money on the security of the bills of lading. Before the 15th of May, when plaintiff reimbursed Griffith, Gibbon had sold the cotton at a profit to parties presumably responsible, and was able to satisfy Cornelius that he had done so. Cornelius thereupon agreed to discount Gibbon's drafts on his customers and to pay back to Griffith the amount he had advanced, upon receiving from him a transfer of the bills of lading, which were then to be attached to the drafts and become security for their payment.

That this was the essence and legal effect of the arrangement, and that it was so understood and intended by the parties, seems to us not seriously doubtful. It is true that one element of the transaction was in form a sale of the bills of lading by Griffith to the plaintiff, and it appears that Griffith was in fact paid a few minutes, or an hour or two, before Cornelius received the drafts from Gibbon; but the entire plan for financing the operation had already been arranged and the order in which the different steps were taken became wholly unimportant. The circumstances under which the bills of lading were purchased, if their acquisition by plaintiff be regarded as a purchase, negative any intention on the part of plaintiff to purchase the cotton itself, for such purchase of the bills was merely incidental to the purpose which plaintiff had in view and the customary business in which it was engaged. In all that was done we see nothing suspicious or even unusual, certainly nothing which should be held to be in violation of the Oklahoma statute which provides that:

"No bank shall employ its moneys directly or indirectly in trade or commerce by buying or selling goods, chattels, wares or merchandise," etc.

The object of this provision is so apparent that it needs no explanation, and it is equally apparent, in our judgment, that the transaction under review is not within the spirit or letter of the prohibition.

.' [2] The claim that plaintiff and Gibbon were partners, or engaged in a joint speculation, is wholly unsupported by anything found in the record. The plaintiff was carrying on the business of banking, and Gibbon was a cotton broker. He had bought this 250 bales of cotton for a certain price and contracted to sell it at a moderate advance. The plaintiff financed the transaction by discounting the drafts of Gibbon on the purchasers of the cotton, and he got his profits in the sum credited to his account. For aught that appears it was an ordinary matter of business between the bank and its customer, and nothing was shown which suggests that they had any sort of partnership relations.

Holding, as we do, that plaintiff and Gibbon were not partners in this enterprise or engaged in a joint undertaking, it follows that Gibbon had no interest in the cotton in question and that it was not subject to attachment in the suit against him.

We have examined with care the authorities cited, but none of them sustains the defendant's contention. The case was properly disposed of in the court below, and the judgment is therefore affirmed.