IN THE

# SUPREME COURT

OF

# OREGON.

---

Argued May 28, affirmed July 29, 1924.

## T. J. CALL *v.* J. L. LINN AND S. K. DEVERILL.

(228 Pac. 127.)

**Partnership—Parol Proof of Acts and Conduct in Particular Transaction or Business Permissible and Sufficient to Establish Partnership.**

1. Existence of partnership depends on parties' intent as determined by their express agreement or inferred from their acts and conduct in particular transaction or business, and it is permissible and sufficient to show admissions of such relation or that they held themselves out to public as partners by parol evidence, even if there is a written agreement between them.

**Appeal and Error—Questions not Limited to Time of Alleged Transaction Held not Prejudicial Error, in View of Answers.**

2. Questions to witnesses as to partnership between defendants *held* not prejudicial error, because too broad and not limited to time of transaction with plaintiff, where answers were confined to such time.

**Witnesses—Large Discretion Allowed Court in Permitting Questions Objected to as not Confined to Particular Issue and Time.**

3. Large discretion should be allowed trial court in permitting questions objected to as not properly confined to particular issue and time.

**Partnership—Admissions of Members Admissible After Establishment of Prima Facie Case of Partnership.**

4. After plaintiff makes *prima facie* case of partnership between defendants, admissions of either may be received.

**Sales—Testimony as to Depreciation in Value from Time of Sale to Date of Resale by Plaintiff Held Competent.**

5. In action for breach of contract to purchase lambs, testimony of qualified witness as to depreciation in value of lambs from date

---

1. Proof of partnership by general reputation, see note in 38 Am Dec. 481.

of contract to time of resale by plaintiff *held* competent to show
market value at time of resale and plaintiff's sale thereof for full
market value.

**Sales—Buyer Refusing to Receive Lambs cannot Complain of Delay
in Shipment Undertaken Immediately Thereafter.**

6. Buyer, refusing to receive lambs in accordance with agree-
ment, whereupon seller immediately ordered cars and shipped lambs
to nearest market for resale as buyer's agent at earliest date he
could get cars, could not complain of delay in shipment.

**Partnership—Relation Between Buyers Sued for Breach of Contract
Held for Jury.**

7. Existence of partnership between buyers sued for breach of
contract to purchase lambs *held* for jury.

**Appeal and Error—Verdict not Interfered With, Unless not Sup-
ported by Material Evidence, or Court Erred on Matter of Law.**

8. Supreme Court cannot interfere with jury's verdict, unless
there is no material evidence to support it, or court erred on matter
of law.

**Sales—Seller may Recover Difference Between Contract Price and
Amount Received on Resale After Buyer's Repudiation of Con-
tract.**

9. On buyer's repudiation of executory contract, seller may sell
for best possible price in open market and recover difference be-
tween amount released and contract price, if he acts in good faith.

**Trial—Instruction as to Liability of One Holding Himself Out as
Partner Held Properly Refused as Inapplicable.**

10. Instruction as to defendant's liability for breach of contract
because of permitting himself to be held out as partner *held* prop-
erly refused as inapplicable, where plaintiff claimed an actual
partnership.

**Trial—Refusal of Instruction Substantially Given not Error.**

11. Refusal of instruction substantially given by court is not
error.

From Yamhill: HARRY H. BELT, Judge.

Department 1.

This action was instituted on the first day of June,
1921, to recover the sum of $9,150.85, from the defend-
ants for breach of a contract for the purchase by the

---

9. Right of resale of goods to fix damages for refusal of pur-
chaser to accept goods, see note in 42 L. R. A. (N. S.) 670.

See 4 C. J., §§ 2834, 2949; 22 C. J., § 480; 30 Cyc., pp. 360, 361,
408, 594; 35 Cyc. pp. 590, 598; 38 Cyc., pp. 1615, 1711; 40 Cyc.,
p. 2418.

defendants from the plaintiff of his 1919 crop of lambs. The plaintiff alleges a partnership between the defendants and states the contract as follows:

"Live Stock Contract.
"Billings, Montana.
"S. K. Deverill,
   "Dealer in Cattle and Sheep.

"This is to certify, That T. J. Call of Ennis have this 19th day of August, 1919, bargained and sold to Linn & Deverill or order, the following described Live Stock, and hereby guarantee the title thereto, viz.:

"About 5100 head lambs being all the 1919 lambs. To be delivered at Alder Sept. 5 to 10 Sept., at 12c per pound, all cripple and culls to be cut back and paid for at what price they are worth.

"Stock guaranteed to be ·in merchantable condition at the time of delivery. All cattle and sheep bought subject to Federal or State inspection. All sheep to be weighed dry 12 hours off feed and water.

"To be weighed at the ranch.

"Received in part payment for above mentioned stock $5600.00.

                              "(Signed)  T. J. CALL.
"Witness: S. K. DEVERILL."

On the evening the contract was entered into the defendant Deverill's wife, who was at Billings about 250 miles from Alder where the business was being transacted, became seriously ill and Deverill on that account was unable to go any further with the business of the alleged partnership. Thereafter, on the twenty-first day of August, 1919, the defendant Linn undertook to cancel the contract by a letter received as Plaintiff's Exhibit No. 3, which is as follows:

"Billings, Montana, August 21, 1919.
"Mr. T. J. Call,
   "Ennis, Montana.
"Dear Sir:

"Went up to Sam's this morning. His wife is in bad condition and it looks like he will have to stay

close home for some time to come and, consequently, I will have to take his job of receiving lambs.

"I got contracts of lambs from him to-night. Your contract reads—'Lambs to be weighed at ranch, your ranch.' Now if they are cut out and weighed, then turned with the ewes again and delivered at Alder with them and again cut out, that would be satisfactory to me, but if they are to be driven for three days on nothing to eat, only dry and no grass, the shrink would be enormous, and supposing a storm should come or the lambs get away in the night, and other happenings might come, how could we adjust matters?

"Now I am sure I want only what is fair and right. I did not pay much attention to your and Sam's verbal contract, as I expected you and him to receive and deliver. I am wiring to stop payment on the check for $6000.00, part payment on lambs, until such time as I see you and understand the matter thoroly.

"Any expense by way of protest, I will stand. Will be up there about the 28th to receive sheep.

"Very truly yours,
"J. L. LINN.
"P. S.—I understand your ranch is 25 miles from Alder."

The draft referred to in the contract and in the letter received as Plaintiff's Exhibit No. 2 is in the following form:

"John Clay & Co.,
"763 Rookery Chicago,
"Alder, Mont., August 19, 1919.
"Pay to the order of T. J. Call.........$6,000.00
Six Thousand no/100...............................
Dollars Acct. 5100 part pay on Lambs.
"LINN & DEVERILL."

The letter, although dated on the twenty-first day of August, was not delivered to the plaintiff until the twenty-ninth day of that month. Immediately upon the receipt of the letter, plaintiff went to Alder where he found the defendant Linn receiving sheep which

he and Deverill had purchased from another party. At the interview on the twenty-ninth day of August, the defendant Linn again refused to receive the lambs, whereupon the plaintiff notified him that he would then resell the lambs and charge to the defendants any loss he would sustain as the result of the breach of the contract by the defendants. Thereupon, the plaintiff ordered cars for the purpose of shipping the lambs to the nearest market. The plaintiff also notified the defendant Deverill, by long distance telephone, that upon a certain time he would weigh the lambs in accordance with the contract of sale. Accordingly, the plaintiff weighed the lambs, drove them to Alder from his ranch a distance of about 21 miles by the route over which the lambs were driven, and shipped them to Omaha where they were resold in the open market. The difference between the sale price and the contract price is the sum of $9,150.85. A verdict for that sum was returned by the jury. The defendant Linn alone was served and a verdict was rendered against the firm of Linn & Deverill for the full amount claimed by the plaintiff. A judgment was duly and regularly entered on the verdict from which judgment the defendant Linn appeals. Deverill, who was not a resident of the State of Oregon and could not be personally served with summons, made no appearance in this action.

The defendant Linn in his answer denies the alleged partnership claiming that the transaction was simply a joint adventure between him and the defendant Deverill. That Deverill had no authority to buy the lambs without the specific approval of the defendant Linn. The evidence on behalf of the plaintiff shows that the contract between the plaintiff and the defendants was entered into by them at the Hotel

Alder when all three were present; that the contract and the draft were both written by Deverill in the immediate presence of Linn; that Deverill also introduced Linn to other parties about that same time as his partner; that the defendants purchased other lambs in that vicinity under the name of Linn & Deverill; that the defendant Linn told other parties that he and Deverill were partners when they bought the plaintiff's lambs. The defendant Linn himself testified that he shipped other lambs from Alder about that time under the name of Linn & Deverill and that the drafts drawn over that name were charged to the account of Linn & Deverill; and further testified as follows:

"Q. Well, you and Deverill were to buy sheep, providing you were satisfied?

"A. He was the buyer, I wasn't supposed to buy.

"The Court: When you bought sheep did you and Deverill divide the profits or losses between you?

"A. We divided the profits.

"The Court: And if you had any losses?

"A. Of course we would have divided them too.

"Q. (By Mr. Cole.) Now these drafts signed by Linn & Deverill, who were they charged up to by John Clay & Co., when paid?

"A. They were charged up to Linn & Deverill."

The exceptions, taken by the defendant Linn, are to the rulings of the court on the admission of testimony over appellant's objections, the denial of appellant's motion for a nonsuit and some instructions given by the court to the jury.

AFFIRMED.

For appellant there was a brief and oral· argument by *Mr. Allan R. Joy* and *Mr. Henry S. Westbrook.*

For respondent there was a brief and oral argu-
ment by *Mr. Bartlett Cole.*

COSHOW, J.—1. Assignments of error numbered
1 to 5 are not well taken. The questions objected to
were propounded to witnesses who had dealings with
the defendant on or about the time of the transaction
between them and the plaintiff. The evidence was
adduced for the purpose of establishing a partner-
ship.

"Our law has always treated the partnership rela-
tion as founded in voluntary contract. It does not
surprise parties into a partnership against their will,
although it does not require an express agreement
between them, nor is it bound by their statements of
intention in associating themselves together for busi-
ness transactions. It will regard their conduct rather
than their language in determining whether their
voluntary associating in a business enterprise
amounts to a partnership or not." 30 Cyc. 352, 353;
*Eilers Music House* v. *Reine,* 65 Or. 598, 604 (133
Pac. 788).

Mr. Justice COOLEY in *Beecher* v. *Bush,* 45 Mich.
188, 193, 194 (7 N. W. 785, 40 Am. Rep. 465), says:

"It is nevertheless possible for parties to intend
no partnership and yet to form one. If they agree
upon an arrangement which is a partnership in fact,
it is of no importance that they call it something else,
or that they even expressly declare that they are not
to be partners. The law must declare what is the
legal import of their agreements, and names go for
nothing when the substance of the arrangement shows
them to be inapplicable. But every doubtful case
must be solved in favor of their intent; otherwise we
should 'carry the doctrine of constructive partnership
so far as to render it a trap to the unwary.' KENT,
C. J., in *Post* v. *Kimberly,* 9 Johns. 470, 504."

"This intention to form a partnership may be expressed in the contract, or it may be gathered from the acts of the parties and from the circumstances which may interpret the agreement between them. But there are certain requisites necessary before the law will in any event regard the relationship between the parties as that of partners." *Roach* v. *Rector,* 93 Ark. 521, 526 (123 S. W. 399, 401)

The last case cited was an action between the alleged partners where much stronger proof is required to establish a partnership than where the action is between a third party and the alleged partnership, but it appears from this case, that even as between the alleged partners the acts of the parties and the circumstances under which they conduct the transaction or the business may always be considered for the purpose of determining the partnership or the intention of the agreement.

"As we understand the law, the essential test in determining the partnership relation is whether the parties intended to establish such a relation; and that, as between themselves, this intention is to be determined by their express agreement *or inferred from their acts and conduct." Causten* v. *Barnette,* 49 Wash. 659 (96 Pac. 225); *Yatsuyanagi* v. *Shimamura,* 59 Wash. 24, 29 (109 Pac. 282).

"In an action by a third person against alleged partners according to the rules elsewhere stated it is sufficient to establish their liability to show admissions of such fact by the alleged partners, or that they have held themselves out to the public as such. The rule is that such proof may be made by parol. It is generally held that in actions by third persons against persons who are alleged to be partners, such partnership may be established by parol evidence even where it appears from the evidence on the trial of the case that there is a written agreement between the parties as to the partnership. * * Partnership may be established by proof of acts and conduct. No rule can

be given as to what particular acts or conduct may be proved in order to establish the relation; nor can the nature and character of the acts be designated. It is only essential that the proof be sufficient to establish such acts and conduct from which the partnership may be reasonably inferred. As tending to establish the relation of partnership proof may be made of the acts; * * personal supervision of the business and receipt of goods in the firm name; the fact that the party sought to be charged was introduced as a member of the partnership, and any representations, conduct or circumstances are proper and competent which are naturally calculated or likely to beget the belief that the parties were partners. The fact of the existence of a partnership may be proved by the habit and course of dealing, and by the conduct and declarations of the partners." 2 Rowley, Modern Law of Partnership, 1238, 1240, §§ 886, 887. See, also, 1 Rowley, Modern Law of Partnership, 95, § 89, note 99, also page 96, notes 3 and 7.

In fact, all of the authorities agree that evidence of the conduct of the parties in the particular transactions involved and of their conduct about the same time are admissible for the purpose of proving a partnership. A partnership may exist for one transaction only. It is not the quantity of business transacted, but the manner of transacting the business, the relation of the parties thereto and to each other, and their interest therein, which constitute a partnership: 30 Cyc. 354, note 25, and 1 Rowley, Modern Law of Partnership, 169, § 168.

2. Objection was made to the form of questions numbered 9 and 23 compounded to one of the witnesses whose evidence was given by deposition. The questions objected to were not in good form. They were too broad, but the answers of the witnesses to the questions confined the evidence to the date of the transaction between the plaintiff and defendants, and

for that reason no harm was done the defendant appealing, and the error permitting the questions to be answered was not prejudicial.

3. The question regarding the relation of the defendants to each other should have been limited to the time, or about the time of the transaction between the plaintiff and the defendants; but, inasmuch as the answer to the question was confined to that time, we are unable to see that any harm could possibly result upon allowing the question to be answered. A large discretion should always be allowed the trial court, because the single question taken alone might appear improper, but when considered with its context and taken with the answer of the witness, would be understood as properly confined to the particular issue and the particular time.

4. Objection was made to the admission of a letter from the defendant Deverill and its admission is assignment of error number 7. Sufficient *prima facie* evidence has been adduced to make the letter admissible. After the plaintiff has made a *prima facie* case, it is proper to receive the admissions of either member of the alleged partnership.

For the reasons heretofore given, assignments of error numbered 8 to 11 are not well taken. These questions propounded to the witness, concerning conversations had with the defendants in regard to further transactions, were propounded for the purpose of proving a partnership. In other words, the questions called for evidence of the conduct of the members of the partnership for the purpose of determining their relation to each other.

5. Assignments of error numbered 12 and 13 are predicated upon the questions and answers of one Ed Nolan. This witness qualified so as to enable him to

testify as to what the value of the lambs was at the
time the sale was made.  He showed that lambs had
depreciated in value from the date of the contract,
August 19, 1919, to the time of the sale on September
24th or 25th of the same year as much as $2.25 and
$2.50 per hundredweight.  This evidence was compe-
tent both for the purpose of showing the market value
of the lambs at the time of the sale by the plaintiff,
and for the purpose of showing that plaintiff had
resold the lambs for their full market value.

6.  According to the terms of the sale, the plaintiff
agreed to deliver the lambs at Alder on or about the
10th of September, 1919, so that they could be shipped
with another purchase made by the defendants on or
about the same time they purchased plaintiff's lambs.
The lambs were not delivered, however, at Alder
until the 16th of September, six days after the time
plaintiff had agreed to deliver them to the defend-
ants.  Plaintiff took immediate steps on the twenty-
ninth day of August, 1919, after his interview with
the defendant Linn when the latter positively refused
to receive the lambs in accordance with the contract
of defendants with the plaintiff, to immediately ship
the lambs to the nearest market for resale as agent
of the defendants.  He ordered cars for shipment.
The earliest date he could get the cars was on Sep-
tember 16, 1919, the date on which they were shipped.
The refusal of the defendants to receive the lambs, in
accordance with the agreement, was the cause of the
delay in the shipment, and defendants cannot now
complain of that delay.  This element of the case will
be further considered in connection with the meas-
ure of damages.

7, 8.  The motion for nonsuit was properly denied
by the court.  There was an abundance of evidence in

support of the contention of the plaintiff that a partnership existed between the defendants. It is true the defendant Linn denies the partnership. Upon that state of the record it was for the jury to determine, upon the evidence, whether or not a partnership existed. That issue having been submitted to the jury, its verdict is final. This court is not permitted to interfere with the jury's verdict, unless it can positively say that there is no material evidence to support the verdict, or that the trial court erred on a matter of law in the conduct of the case. The court does not intend, by what it has said, to express an opinion upon the weight of the testimony. It is bound, under the law, to accept the verdict of the jury upon the facts submitted to the jury.

The authorities, cited by appellant Linn in support of his contention, that there was no holding out, were not in point. The pleadings are not based upon that theory. The plaintiff stated in open court, during the progress of the trial, that he was not relying upon a holding out, but was relying upon an actual partnership between the defendants.

9. The appellant Linn complains of the court's refusal to give three requested instructions. The court instructed the jury on the measure of damages as follows:

"You are instructed as a matter of law that in an executory contract for the sale of sheep, if the buyer, after having made a contract, repudiates the contract, the seller has the right to go upon the open market and sell for the best possible price, the sheep in question, and if the money realized from the sale of the sheep is less than the contract price, then his measure of damages is the difference between the contract price and the amount actually received. In this respect, the seller must act in good faith, and he must

sell for the best obtainable price. In other words, and simply stated, the measure of damages is the difference between the contract—if the plaintiff is entitled to prevail, and that is a question of fact for you to determine—between what he received upon the open market and what the contract states he should receive."

This instruction clearly states the law in this state: *Wigan* v. *LaFollett,* 84 Or. 488, 504, 505 (165 Pac. 579); *Daniels* v. *Morris,* 65 Or. 289, 297 (130 Pac. 397, 132 Pac. 958); 24 R. C. L. 109, sec. 377; *Clews* v. *Jamison,* 182 U. S. 461 (45 L. Ed. 1183, 21 Sup. Ct. Rep. 845, see, also, Rose's U. S. Notes); *West* v. *Cunningham,* 9 Port. (Ala.) 104 (33 Am. Dec. 300); *Arkansas etc. Grain Co.* v. *Young etc. Grain Co.,* 79 Ark. 603 (96 S. W. 142, 116 Am. St. Rep. 99, and note with authorities cited therein); *Mendel* v. *Miller,* 126 Ga. 834 (56 S. E. 88, 7 L. R. A. (N. S.) 1184). All these authorities support this proposition. This proposition is stated in *Krebs Hop Co.* v. *Livesley,* 59 Or. 574, 588 (118 Pac. 165, Ann. Cas. 1913C, 758), as follows:

"As held in *Dustan* v. *McAndrew,* 44 N. Y. 72, upon the failure of a purchaser to perform a contract for the sale of personal property, the vendor, as a general rule, has the election of three remedies: (1) To hold the property for the purchaser, and to recover of him the entire purchase money; (2) to sell it, after notice to the purchaser, as his agent for that purpose, and recover the difference between the contract price and that realized on the sale; (3) to retain it as his own, and recover the difference between the contract and market prices at the time and place of delivery."

The plaintiff promptly notified the defendant Linn on the 29th of August, 1919, immediately upon the positive refusal of Linn to receive the lambs, that he would sell them in the open market and charge him with the loss, if any. The plaintiff also notified

Deverill when he intended to weigh the lambs, in accordance with the contract, and drive them to Alder to be shipped. There was no delay on the part of the plaintiff. There is no serious contention that the sale made by the plaintiff was not openly and fairly made and the highest market price received for the lambs: *Clews* v. *Jamison*, 182 U. S. 461 (45 L. Ed. 1183, 21 Sup. Ct. Rep. 845, see, also, Rose's U. S. Notes).

10, 11. Requested instruction No. 2 is not applicable to the case although it may correctly state the law. The question of the defendant being held liable, because permitting himself to be held out as a partner, was not in the case. Requested instruction No. 4 was substantially given by the court. There are other assignments of error, which have been carefully examined and which we find not well taken. They are not deemed of sufficient importance to be further noticed.

The judgment appealed from is affirmed.

AFFIRMED.

McBRIDE, C. J., and BEAN and RAND, JJ., concur.