Argued June 14; affirmed July 1, 1944

# PRESTON *v.* STATE INDUSTRIAL ACCIDENT COMMISSION ET AL.

(149 P. (2d) 957)

*Ralph H. Campbell,* of Salem, for appellant.

*Elliott B. Cummins,* Assistant Attorney-General, of Salem, (George Neuner, Attorney-General, C. L. Marsters, Assistant Attorney-General, and John K. Crowe, Assistant Attorney-General, all of Salem, on the brief), for respondents.

*Custer Ross,* of Salem, (Ross & Lewelling, of Salem, on the brief), for intervenor-respondent, J. H. Maden.

Before BAILEY, Chief Justice, BELT, ROSSMAN, LUSK and BRAND, Associate Justices.

BRAND, J.

AFFIRMED.

This is an action by John W. Preston against the State Industrial Accident Commission, defendant, and J. H. Maden, intervenor-defendant. The plaintiff seeks to recover compensation for an injury suffered by him in the course of his employment in hazardous industry, pursuant to the provisions of the Workmen's Compensation Act. The only question involved is whether or not the plaintiff and his employer were subject to the Workmen's Compensation Act at the time of the injury. At the close of the trial, the court directed the jury to return a verdict to the effect that

the plaintiff was not employed as a workman subject to the Oregon Workmen's Compensation Law and judgment for the defendants was entered upon the verdict. The plaintiff appeals.

BRAND, J.

Jesse B. Maden and J. H. Maden are brothers. Jesse B. Maden is a logger and during the times in question was engaged in logging and woodcutting. J. H. Maden was local agent for the International Harvester Company and was engaged as J. H. Maden Company in the implement business and operated a repair shop near Salem.

Pursuant to O.C.L.A. §§ 102-1712, 102-1721, Jesse B. Maden, the logger, filed in the usual form a rejection of the provisions of the Workmen's Compensation Act as to any and all hazardous occupations in which he was then engaged or might in the future engage. Thereafter, he took no action to bring him again under the Act. In July, 1942, the plaintiff was employed. On August 25, 1942, while engaged in bucking logs, he was injured. A single question is presented for our determination. The plaintiff contends that he was the employee of Jesse B. Maden and J. H. Maden as partners or joint adventurers. The defendants contend that the plaintiff was the employee of Jesse B. Maden only and that J. H. Maden was neither a partner nor joint adventurer in the logging business.

The plaintiff concedes that "if the appellant [plaintiff] was the employee solely of J. B. Maden in this operation and not of a partnership or joint adventure, then the rejection would be effective * * *." We agree that the plaintiff cannot recover under the Compensation Act if he was the employee solely of Jesse B.

Maden who filed the rejection. If there was no substantial evidence of partnership or joint adventure between Jesse B. Maden and J. H. Maden, then the judgment for the defendants was clearly right. A brief summary of the evidence will suffice.

The facts are substantially undisputed. The direct evidence submitted by the defendants is all to the effect that there was no partnership or joint adventure between the brothers. There is no direct evidence of any partnership or agreement, written or oral. Jesse B. Maden hired the plaintiff and at the time of plaintiff's employment he had no reason to believe that anyone other than Jesse B. Maden was involved in the logging business. Jesse B. Maden had exclusive direction and control of the plaintiff's work and of the logging operation. There is no direct evidence of any agreement to share profits or losses between the brothers, or that J. H. Maden had any interest in the logging equipment, or in the logging business, except as hereinafter indicated. J. H. Maden had no direction or control over the logging and, conversely, Jesse B. Maden had no connection with the J. H. Maden Company. Notwithstanding the direct testimony as above set forth, the plaintiff contends that the conduct of the parties was such as to raise an inference that they were partners and that the question should have been submitted to the jury. The plaintiff testified that Jesse B. Maden hired him, and added:

"Well, J. B. Maden was the man who hired me and as far as I could see, the particular time when I was employed, he was the one who was operating it but later on I seen his brother out there."

The testimony on which the plaintiff relies is not contradicted by the defendants. In substance it indi-

cates that Jesse B. Maden was indebted to the extent of some thousands of dollars to his brother, J. H. Maden, and that J. H. Maden was financing his brother, Jesse B. Maden, in connection with the logging operation.

The following procedure was employed in the payment of employees of the logging operation: they would receive a statement of their time from Jesse B. Maden who was running the business; they would present it to J. H. Maden at his place of business and would receive from him their pay. A similar procedure was followed with reference to money owing to Jesse B. Maden on account of logs and wood products sold by him to third parties. Upon orders of Jesse B. Maden the purchasers made payment for the logs to J. H. Maden. Jesse B. Maden was the owner of a large amount of logging equipment. When repairs were necessary, the equipment was taken to the repair shop of J. H. Maden and repairs were made. The undisputed testimony discloses that J. H. Maden kept an accurate ledger account with his brother in all of the foregoing transactions. When Jesse B. Maden needed money for the payment of his help, J. H. Maden advanced it and charged the amount against Jesse on the books. When, upon the order of Jesse, money due him from third persons was paid to J. H. Maden, Jesse was credited on the books. When it became necessary to make repairs to the logging equipment, those repairs were generally made by J. H. Maden who charged his brother therefor. On some occasions the repairs were of such a nature that J. H. Maden was without the necessary facilities and under such circumstances he requested another firm to perform the work which was charged against J. H. Maden who,

in turn, charged the cost against Jesse. J. H. Maden held the promissory notes of his brother for a portion of the indebtedness and a portion of it was upon open account. Interest was charged against Jesse on at least a portion of the account. J. H. Maden took and held security in the form of chattel mortgages against substantially all of Jesse's logging equipment. Jesse drew enough money in varying amounts, and from time to time, to cover his living expenses. All of the balance of funds received by J. H. Maden after paying Jesse's bills was applied to the reduction of Jesse's indebtedness and credited to Jesse upon the books which were kept by J. H. Maden's secretary.

The plaintiff had seen J. H. Maden on one or two occasions in the vicinity of Jesse's operation and had received some of his pay from J. H. Maden. But the plaintiff himself testified:

"Q. And J. H. Maden didn't ever exercise any control over you that you knew of? He didn't boss you or tell you where to work or how much to buck, or any of the details?

"A. No, he never did.

\* \* \*

"Q. You started to work for J. B. Maden? [referring to July, 1942]

"A. That's right.

\* \* \*

"Q. Now during all the time you worked up there you had no dealings with Jas. H. Maden at all, did you?

"A. No, none personally.

"Q. You were employed by J. B. Maden?

"A. Yes, I think he was my employer, my boss."

Witnesses Osborn, Mansveld and Smith were called by the plaintiff and all testified that they were working for Jesse B. Maden.

When new tires were purchased for the logging operation, they were bought through J. H. Maden by means of which Jesse secured a twenty-five percent discount, but the cost to J. H. Maden was charged against Jesse. Gas and oil for the logging trucks was purchased from J. H. Maden and the trucker would make a note of it "as 'J. B. Maden' and ' '41 Ford' and so much gas and oil."

It is the undisputed evidence of the witnesses that Jesse B. Maden was "boss." The testimony discloses numerous other transactions between the parties, but we find that the evidence of the conduct of the brothers is entirely consistent with their direct testimony and that all of the transactions in which J. H. Maden participated were consistently treated by both parties as creditor and debtor transactions. The dealings between the brothers were essentially the same as they would have been had Jesse secured his financing from a bank instead of from his brother, the distinction being that J. H. Maden was extremely liberal in the extension of credit to his brother and in extending other minor accommodations which Jesse could probably not have secured elsewhere. The undisputed evidence is to the effect that when and if Jesse's indebtedness to J. H. Maden should be liquidated, the latter would have no further interest of any kind in the logging business conducted by Jesse.

■ There is some evidence that J. H. Maden retained the title to a caterpillar tractor which he had furnished to Jesse, the agreement being that Jesse was to maintain all repairs at his own expense and that as soon as Jesse got "squared up" J. H. Maden would charge it to him at the regular retail price. That transaction does not tend to prove any partnership.

Upon a review of all of the evidence, the most that can be said is that J. H. Maden, by a course of conduct, did acts which partners or joint adventurers also do. However, his entire conduct is also consistent with all of the direct and undisputed evidence which discloses that he was not a partner but was merely extending financial assistance to his brother. We find no suspicions of bad faith or attempt at an evasion on the part of J. H. Maden.

■ The distinction between a partnership and a joint adventure is of no importance in this case for though a joint adventure is not in a strict legal sense a co-partnership, the rules and principles applicable to a partnership relation govern and control the rights, duties, and obligations of the parties as to each other. *McKee v. Capitol Dairies,* 164 Or. 1, 99 P. (2d) 1013. In the ensuing discussion we shall for brevity employ the term "partnership" as if inclusive of "joint adventure."

■ The question in this case is whether, as between themselves, the brothers were partners. If Jesse B. Maden was in fact and law the sole employer, then the parties were not under the Workmen's Compensation Act and plaintiff could not recover. While, as to third persons, one may in some instances be held to be a partner by estoppel though not one in fact, (O.C.L.A. § 79-308; *Babcock Co. v. Katz,* 121 Ore. 64, 253 P. 373) that rule has no application in this case. There is neither pleading nor proof to support any such claim. *American Bank v. Port Orford Cedar Products Co.,* 140 Or. 138, 12 P. (2d) 1014. Whether, upon proper pleading and proof, persons not otherwise under the Act could be held subject to it solely by reason of a

"partnership by estoppel" in an action brought by an injured workman against the Commission is to be doubted, but the question is not before us.

■■ Partnership is never presumed, hence the burden of establishing the partnership is upon the party who alleges it. *Herrold v. Hartley,* 144 Or. 368, 24 P. (2d) 338; *Burke Machinery Co. v. Copenhagen,* 138 Or. 314, 6 P. (2d) 886; *H. H. Warden Co. v. Beals,* 120 Or. 66, 250 P. 375. In support of his contention that the question as to the existence of a partnership should have been submitted to the jury, the plaintiff quotes the following:

" 'What will constitute a partnership is a matter of law, but whether the partnership exists under the evidence is one of fact for the jury, unless, in the opinion of the Court, but one inference can be drawn by reasonable men.' " 47 C. J. 733; also cited see 47 C. J. 1004; 33 C. J. 871; 20 R. C. L. 849.

■ We venture no criticism of the authorities cited. If there was any substantial evidence of the existence of a partnership, a jury question would be involved. *Call v. Linn,* 112 Or. 1, 228 P. 127. We agree, also, with the plaintiff's assertion that in the absence of a written agreement showing the intention of the parties, their acts and conduct would become relevant upon the issue, but before acts and conduct can be deemed relevant on the issue of fact, we must first determine what constitutes a partnership as a matter of law. The only conduct which is relevant in such cases is that which tends to prove what the law defines as a partnership and it is only substantial evidence of that character which requires submission to a jury.

■ Our statute provides

"A partnership is an association of two or more

persons to carry on as co-owners a business for profit.'' O. C. L. A. § 79-201.

''In determining whether a partnership exists, these rules shall apply:

"(1) Except as provided by § 79-308 [relating to partnerships by estoppel] persons who are not partners as to each other are not partners as to third persons.

\* \* \*

"(4) The receipt by a person of a share of the profits of business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:

"(a) As a debt by instalment or otherwise;

\* \* \*

"(d) As interest on a loan, though the amount of payment varies with the profits of the business \* \* \*.'' O.C.L.A. § 79-202.

"\* \* \* As a general rule, in order to constitute a partnership inter se, the community of interest between the parties must be of such a nature that it makes each member a coprincipal and an agent of all the members in the business with joint authority or right in the administration, control or disposal of the business or its property.'' *First National Bank of Eugene v. Williams,* 142 Or. 648, at 660, 20 P. (2d) 222.

■ Partnership is the product of voluntary contract, express or implied. 40 Am. Jur., Partnership, § 16, p. 136. The prevailing view is that no arbitrary test is conclusive, but that the existence of a partnership depends substantially upon the expressed legal intent of the parties: what is the actual character of the relationship intended in point of fact and does that relationship amount to a partnership in point of law?

As statements generally applicable, this court has defined a partnership as:

" 'A contract of two or more competent persons to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business, and to divide the profit and share the loss in certain proportions.' 3 Kent, Comm." *Hansen v. Bogan,* 127 Or. 399, 272 P. 668.

" 'Our law has always treated the partnership relation as founded in voluntary contract. It does not surprise parties into a partnership against their will, although it does not require an express agreement between them, nor is it bound by their statements of intention in associating themselves together for business transactions. It will regard their conduct rather than their language in determining whether their voluntary associating in a business enterprise amounts to a partnership or not.' 30 Cyc. 352, 353; Eilers Music House v. Reine, 65 Or. 598, 604 (133 Pac. 788)." *Call v. Linn,* 112 Or. 1, 228 P. 127.

"The interest which each member of a firm has in the partnership stock and business consists in the net balance remaining to him after all the partnership debts have been paid and the equities between each partner and his copartners have been adjusted." *Eilers Music House v. Reine,* 65 Or. 598, 133 P. 788.

Even the receipt of a portion of the profits does not conclusively establish the existence of a partnership. *Herrold v. Hartley,* supra. In *H. H. Worden Co. v. Beals,* supra, this court held that where both community of interest in a business and common control thereof is lacking, sharing of profits of the business is not sufficient to constitute a partnership. Again, we have held:

" 'Partnership and community of interest, independently considered, are not always the same

thing, nor is a mere community of interest sufficient, but there must be an agreement to share the profits and losses, and such profits must be shared as a result of the adventure or enterprise, in which both are interested and not simply as a measure of compensation.' '' *Shebley v. Quatman,* 66 Or. 441, 134 P. 68. And see: *Smith v. McGowan,* 131 Or. 522, 284 P. 189; *Elliott v. Murphy Timber Co.,* 117 Or. 387, 244 P. 91, 48 A. L. R. 1043.

■ An agreement to finance a scheme or operation does not constitute the lender a joint adventurer with the borrower; and this is true even where the profits resulting from the venture were to be divided between the operator and the person advancing the money. 30 Am. Jur. 688, § 23, *Poulson v. DeNavarro,* 57 App. Div. 623, 68 N. Y. Supp. 117; *National Surety Company v. Winslow,* 143 Minn. 66, 173 N. W. 181; *McLean v. City State Bank of Mangum,* Okl. 210 Fed. 21, 126 C. C. A. -601.

Reverting to the definition of partnership, in the uniform act, O. C. L. A. § 79-201, we find that coownership of a business, though not necessarily of specific property, is of the essence. Here there was no evidence of such coownership. Under the act the business must be carried on for profit. There is not a scintilla of evidence that J. H. Maden ever received or claimed any interest in the profits as such, if there were any. When associates, as coowners, carry on a business for profit, it is presumed they will likewise share the burden of losses. There is no evidence of any risk of loss assumed by J. H. Maden other than that which every creditor assumes in relying upon the financial responsibility of his debtor.

■ We observe from the act, O. C. L. A. § 79-202, that the receipt by a person of a share of the profits is prima facie evidence that he is a partner but "no such inference shall be drawn" if such profits were received in payment of a debt. Assuming that there were profits from the logging enterprise, the undisputed evidence shows that they were received in partial payment of a debt. By the plain mandate of the statute, no inference of partnership arose therefrom. We find no substantial evidence of joint authority or right in the administration of the business nor do we find evidence of any actual intent to form a partnership. The undisputed evidence discloses that when and if Jesse pays up his indebtedness to J. H. Maden, the latter will have no further interest in, or connection with, the logging business. Under the rule of *Eilers Music House v. Reine,* supra, the plaintiff's evidence is insufficient.

The defendants rely upon *Judson v. Bee Hive Auto Service Company,* 136 Or. 1, 294 P. 588, 297 P. 1050, 74 A. L. R. 944, wherein it was held that evidence raising an inference favorable to a plaintiff might be overcome as a matter of law if the entire evidence is of such a character that but one reasonable deduction could be made therefrom. But it is unnecessary for us to resort to that doctrine. The mere introduction in evidence of some conduct which is consistent with the existence of a partnership, but equally consistent with its nonexistence, does not necessarily raise an inference of partnership when the burden of proof is upon the plaintiff. In its most favorable aspect, the plaintiff's evidence rises only to the level of bare speculation.

■  When, as here, the relevant facts are substantially undisputed, the question as to whether or not a partnership exists is one of the law for the court. *In re Andersen's Estate,* 101 Or. 94, 188 P. 164, 198 P. 236.

Being of the opinion that there was no substantial evidence of partnership, the judgment of the circuit court is affirmed.