849 P.2d 1365 (1993)
William J. BAUER, Appellant,
v.
The BLOMFIELD COMPANY/HOLDEN JOINT VENTURE, an Alaska Partnership; Charles A. Blomfield; Patricia A. Blomfield; Charles Anthony Blomfield; Richard H. Monsarrat; and The Blomfield Company, Appellees.
No. S-4255.
Supreme Court of Alaska.
April 9, 1993.
Rehearing Denied April 30, 1993.
*1366 Arthur H. Peterson, Richard D. Monkman, Dillon & Findley, Juneau, for appellant.
Robert J. Dickson, Susan Wright Mason, Atkinson, Conway & Gagnon, Anchorage, for appellees.
Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION
BURKE, Justice.
William J. Bauer, assignee of a partnership interest, sued the partnership and the individual partners, claiming that partnership profits were wrongfully withheld from him. The superior court granted summary judgment to the partnership and individual partners, and dismissed Bauer's complaint with prejudice. We affirm.

I
In 1986 William Bauer loaned $800,000 to Richard Holden and Judith Holden. To secure the loan, the Holdens assigned to Bauer "all of their right, title and interest" in a partnership known as the Blomfield Company/Holden Joint Venture. The other members of the partnership  Charles Alfred (Chuck) Blomfield, Patricia A. Blomfield, Charles Anthony (Tony) Blomfield and Richard H. Monsarrat  consented to the assignment. According to the consent document, their consent was given "[p]ursuant to AS 32.05.220."[1]
When the Holdens defaulted on the loan, Bauer sent the following notice to the partnership members: "William Bauer hereby gives notice that he is exercising his rights to receive all distributions of income and principal from the Blomfield Company/Holden Joint Venture Partnership." Thereafter, for a time, the partnership income share payable to the Holdens was paid monthly to Bauer.
In January, 1989 the partners stopped making income payments to Bauer. They, instead, agreed to use the income of the partnership to pay an $877,000 "commission" to partner Chuck Blomfield. Bauer was not a party to this agreement; he was notified of the agreement after the fact by means of a letter dated January 10, 1989. Bauer was not asked to consent to the agreement, and he never agreed to forego payment of his assigned partnership income share or to pay part of the "commission" to Blomfield. The amount Bauer would have received, had the "commission" not been paid, was $207,567.
Blomfield's $877,000 commission represented five percent of the increased gross rental income earned by the partnership from lease extensions obtained from the *1367 state by Blomfield on partnership properties leased by the state. These and other lease extensions were obtained when a private claim made against the state by Chuck Blomfield and Patricia Blomfield for $1,900,000 was settled. Other lease extensions thus obtained were on properties not owned by the partnership; these properties were owned by the Blomfields and were leased by them to the state. One of the conditions upon which Chuck and Patricia Blomfield based their settlement was the agreement of the partners to pay Chuck Blomfield an $877,000 commission for the lease extensions that he obtained on the partnership's properties.

II
Insisting that his assigned right to the Holdens' share of the partnership's income had been violated, Bauer filed suit in superior court against the partnership and all of the partners except the Holdens. Bauer sought declaratory and injunctive relief, and damages. His various claims were dismissed, with prejudice, when the court concluded that Bauer's assignment from the Holdens did not make him a member of the partnership. Therefore, he was not entitled to complain about a decision made with the consent of all the partners. This appeal followed.

III
The assignment to Bauer of the Holdens' "right, title and interest" in the partnership, did not, in and of itself, make Bauer a partner in the Blomfield Company/Holden Joint Venture. See AS 32.05.220. We are unpersuaded by Bauer's argument that he should be considered a de facto partner.
As the Holdens' assignee, Bauer was not entitled "to interfere in the management or administration of the partnership business or affairs, or to require any information or account of partnership transactions or to inspect the partnership books." AS 32.05.220(a).[2]
The "interest" that was assigned to Bauer was the Holdens' "share of the [partnership's] profits and surplus." AS 32.05.210.[3] The assignment only entitled Bauer to "receive ... the [partnership] profits to which the [Holdens] would otherwise be entitled." AS 32.05.220(a) (emphasis added). Because all of The Blomfield Company/Holden Joint Venture partners agreed that Chuck Blomfield was entitled to receive an $877,000 commission, to be paid out of partnership income, we agree with the superior court's conclusion that there were no partnership profits which the Holdens, and thus Bauer, were entitled to receive until the commission was fully paid.
AFFIRMED.
MATTHEWS, J., with whom RABINOWITZ, C.J., joins, dissenting.
MATTHEWS, Justice, with whom RABINOWITZ, Chief Justice, joins, dissenting.
It is a well-settled principle of contract law that an assignee steps into the shoes of an assignor as to the rights assigned.[1] Today, *1368 the court summarily dismisses this principle in a footnote and leaves the assignee barefoot.
The court's analysis, set out in three cursory paragraphs is this: (1) Bauer was not a partner; (2) Bauer, as an assignee, was not entitled to interfere in the management of the partnership; (3) Bauer's assignment entitled him to receive only the profits the Holdens would have received; and (4) Bauer was due nothing because no profits were distributed. These statements are generally correct as far as they go. However, they do not address the issue in dispute: whether the partners owe Bauer a duty of good faith and fair dealing.
The court is correct to state that Bauer's assignment entitles him to nothing if the partnership decides to forego a distribution. However, this statement leaves unanswered the crucial question that must first be asked: was the partners' decision to pay Blomfield a "commission," thereby depleting profits for distribution, a decision made in good faith? Until this question is answered, we cannot know if Bauer was unjustly deprived of that to which he is entitled.
The court dismisses the main issue in a short footnote, stating "[w]e are unwilling to hold that partners owe a duty of good faith and fair dealing to assignees of a partner's interest." The court reasons that to find such a duty "would undermine the clear intent of AS 32.05.220(a). Partners should be able to manage their partnership without regard for the concerns of an assignee... ." The court is correct in noting that Bauer has no management rights in the partnership. Bauer's attempt to enforce his right to profits under the assignment is not, however, an interference with the management of the partnership. Requiring the partners to make decisions regarding distributions in good faith does not interfere with management, it merely requires that the partners fulfill their existing contractual duties to act in good faith.
I further disagree with the court's interpretation of the intent of the statute. The statute's intent is to assure that an assignee does not interfere in the management of the partnership while receiving "the profits to which the assigning partner would otherwise be entitled." AS 32.05.220(a). As interpreted by the court, the statute now allows partners to deprive an assignee of profits to which he is entitled by law for whatever outrageous motive or reason. The court's opinion essentially leaves the assignee of a partnership interest without remedy to enforce his right.[2]
Upon formation of the Blomfield Company/Holden Joint Venture, a contractual relationship arose among the partners.[3] This court has held that a covenant of good faith and fair dealing is implied in all contracts.[4] *1369 We have noted that the basis for imposing this duty "is a hybrid of social policy and an effort to further the expectations of the contracting parties that the promises will be executed in good faith." Alaska Pacific, 794 P.2d at 947. The duty of good faith and fair dealing "requires `that neither party ... do anything which will injure the right of the other to receive the benefits of the agreement.'" Klondike Indus. Corp. v. Gibson, 741 P.2d 1161, 1168 (Alaska 1987) (quoting Guin, 591 P.2d at 1291).
One element of the contract between the Holdens and the partnership is the Holdens' right to receive their share of profits when a distribution is made. As an element of the partnership contract, this right is accompanied by the duty of the parties to deal fairly and in good faith. The partnership has a right to decide not to make a distribution, but in making this decision, the partnership must act in good faith.[5]
The Holdens assigned to Bauer that part of the partnership contract that entitled the Holdens to receive distributions. Under the law of assignments, Bauer steps into the shoes of the Holdens as to this distribution right. Accompanying this contract right is the partners' duty to act in good faith. Thus, as the assignee of that element of the contract, the partners owe Bauer a duty of good faith and fair dealing in deciding whether to make a distribution.
Holding that, as a matter of law, the partners owe Bauer a duty of good faith when deciding whether to make a distribution does not resolve the dispute in this case. Whether the decision to pay the "commission" in lieu of making a distribution was made in good faith is a factual question. See 3A Arthur L. Corbin, Corbin on Contracts § 654B, at 89 (Supp. 1992) ("Good faith always involves questions of fact... . If there is a dispute as to why someone did what he did, there is a question of fact for the jury."). As the moving party on a motion for summary judgment, the burden is on the partnership to demonstrate that no genuine issue existed as to whether the decision to pay the 5% "commission" was made in good faith.[6] The partnership presented little to no evidence on this issue.[7] This court should thus remand *1370 to the superior court for a factual determination of whether or not the decision by the partners to pay Blomfield's "commission" was made in good faith.
The court's decision today effectively leaves an assignee with no remedy to enforce his right to receive partnership profits. Without such a remedy, his assignment becomes worthless. As I believe this result is contrary to basic contract and assignment law, I dissent from the court's opinion.
NOTES
[1] AS 32.05.220 provides:

(a) A conveyance by a partner of a partner's interest in the partnership does not by itself dissolve the partnership, nor as against the other partners in the absence of agreement, entitle the assignee, during the continuance of the partnership, to interfere in the management or administration of the partnership business or affairs, or to require any information or account of partnership transactions or to inspect the partnership books, but it entitles the assignee to receive in accordance with the assignee's contract the profits to which the assigning partner would otherwise be entitled.
(b) In the case of a dissolution of the partnership, the assignee is entitled to receive the assignor's interest and may require an account from the date only of the last account agreed to by all of the partners.
[2] We are unwilling to hold that partners owe a duty of good faith and fair dealing to assignees of a partner's interest. To do so would undermine the clear intent of AS 32.05.220(a). Partners should be able to manage their partnership without regard for the concerns of an assignee, who may have little interest in the partnership venture. As commentators have explained:

The U.P.A. rules concerning assignment of partnership interests and the rights of assignees balance the interests of assignees, assignors, and nonassigning partners in a way that is suited to the very closely held business. Although the assignee's impotence obviously limits the market value of the partners' interest, the partners need to be protected from interference by unwanted strangers.
Alan R. Bromberg and Larry E. Ribstein, Partnership § 3:61 (1988).
[3] AS 32.05.210 provides: "A partner's interest in the partnership is the partner's share of the profits and surplus."
[1] 6A C.J.S. Assignments § 88 (1975) ("An assignee stands in the shoes of the assignor and ordinarily obtains only the rights possessed by the assignor at the time of the assignment, and no more."); United States v. American Nat'l Bank, 443 F. Supp. 167, 174 (N.D.Ill. 1977) ("The assignee stands in the shoes of its assignor."); Massey-Ferguson Credit Corp. v. Brown, 173 Mont. 253, 567 P.2d 440, 444 (1977) ("An assignee stands in the shoes of the assignor... ."); see also id. § 73 ("A valid assignment generally operates to vest in the assignee the same right, title, or interest that the assignor had in the thing assigned... ."); id. § 76 ("Unless a contrary intention is manifest or inferable, an assignment ordinarily carries with it all rights, remedies, and benefits which are incidental to the thing assigned... .").
[2] The court notes that the Uniform Partnership Act balances the rights of assignees, assignors, and nonassigning partners. One of the ways in which the U.P.A. accomplishes this is to provide the assignee with the right to petition a court for dissolution of the partnership. The U.P.A. states that upon application of an assignee, the court must decree a dissolution if the partnership was a partnership at will at the time of assignment. U.P.A. § 32(2)(b). Although the Alaska Partnership Act was copied from the U.P.A., due to an error in cross-referencing, it is unclear that an assignee in Alaska has the right to apply for a dissolution. Thus he may be deprived of one of the "balances" that the U.P.A. sets up for his protection.
[3] See Alan A. Bromberg & Larry E. Ribstein, Partnership § 1.01, at 1:11 (1988) ("Fundamentally, general partnership is a contractual relationship among the partners."); Grimm v. Pallesen, 215 Kan. 660, 527 P.2d 978, 982 (1974) ("`It ... has been repeatedly declared that a man cannot be made a partner against his will, by accident, or by the conduct of others, for the reason that partnership is a matter of contract.'") (quoting Wade v. Hornaday, 92 Kan. 293, 140 P. 870, 871 (1914)); Eder v. Reddick, 46 Wash.2d 41, 278 P.2d 361, 365 (1955) ("A contract of partnership, either express or implied, is essential to the creation of the partnership relationship."); Preston v. State Indus. Accident Comm'n, 174 Or. 553, 149 P.2d 957, 961 (1944) ("`Our law has always treated the partnership relation as founded in voluntary contract.'") (quoting Call v. Linn, 112 Or. 1, 228 P. 127, 129 (1924)).
[4] Alaska Pacific Assurance Co. v. Collins, 794 P.2d 936, 947 (Alaska 1990) ("A covenant of good faith and fair dealing is an implied component of all contracts as a matter of law."); Alyeska Pipeline Serv. Co. v. H.C. Price Co., 694 P.2d 782, 788 (Alaska 1985) ("Parties to a contract have mutual obligations of good faith and fair dealing."); Guin v. Ha, 591 P.2d 1281, 1291 (Alaska 1979) ("In every contract ... there is an implied covenant of good faith and fair dealing... ."); see also Restatement (Second) of Contracts § 205 (1981) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.").
[5] See Brooke v. Mt. Hood Meadows Oreg., Ltd., 81 Or. App. 387, 725 P.2d 925, 929 (1986) ("Like the corporate director's fiduciary responsibility to the shareholders for the declaration of dividends, the general partner's duty to the limited partners in the distribution of profit is discharged by decisions made in good faith that reflect legitimate business concerns."); see also Betz v. Chena Hot Springs Group, 657 P.2d 831, 835 (Alaska 1982) ("Absent bad faith, breach of a fiduciary duty, or acts contrary to public policy, we will not interfere with the management decisions of the firm."); Steven J. Burton, Breach of Contract and the Common Law Duty to Perform in Good Faith, 94 Harv.L.Rev. 369, 385-86 (1980) ("The good faith performance doctrine may be said to permit the exercise of discretion for any purpose  including ordinary business purposes  reasonably within the contemplation of the parties.").
[6] McGee Steel Co. v. State ex rel. McDonald Indus. Alaska, Inc., 723 P.2d 611, 615 (Alaska 1986) ("The moving party bears the burden of demonstrating the absence of any genuine issue of material fact and its entitlement to judgment as a matter of law."); Stanfill v. City of Fairbanks, 659 P.2d 579, 581 (Alaska 1983) ("In ruling on a motion for summary judgment, all reasonable inferences must be drawn in favor of the non-moving party and against the movant. The burden of proving the absence of any genuine issues of material fact is upon the moving party.").
[7] In support of its contention that the decision to pay the "commission" was fair, the partnership argued that the amount paid to Blomfield was the "standard" rate. The only evidence presented by the partnership was the testimony of Blomfield himself that a 5% "commission" was standard. One should view this with some skepticism as Blomfield was dealing with a tenant who was already in the building and did not have to be located or persuaded to move in. Furthermore, the rate Blomfield received is greater than 5% as the rent on which the "commission" is based is a future stream of income, not a present lump sum. After discounting future rental income to its present value, Blomfield's "commission" is greater than 5%.