Argued September 14, affirmed October 25, 1977

MURPHY, *Respondent,*
*v.*
JACOBS, *Defendant,*
and
HILL, *Appellant.*
(No. 76-129 L, SC 25182A)
570 P2d 371

William P. Brandsness, Klamath Falls, argued the cause and filed a brief for appellant.

[ 215 ]

No appearance for respondent.

Before Denecke, Chief Justice, Tongue and Bryson, Justices, and Gillette, Justice Pro Tempore.

BRYSON, J.

**BRYSON, J.**

Plaintiff brought this action against defendants to recover the balance due for hay sold after a check to plaintiff in the amount of $5,000 was returned for insufficient funds. The trial court, sitting without a jury, found in favor of plaintiff and entered judgment. Defendant Hill appeals.[1]

Defendant assigns as error the trial court's denial of her motion for a directed verdict and contends that the court erred in its findings of fact.

At trial the plaintiff contended that Jacobs and defendant Hill represented themselves as partners and that plaintiff relied upon such representation thereby creating a partnership by estoppel between Jacobs and Hill, and, therefore, defendant Hill was liable for the balance due for the hay delivered by plaintiff.

Defendant Hill's principal contention is:

"There is absolutely no evidence in the testimony of Mrs. Murphy that she and the Plaintiff [her husband] relied upon the credit of Mrs. Hill and changed their position in such reliance."

The trial court found

"* * * that C. N. [M.] Hill did write checks in the amount of $3,700.00 and $4,000.00, having stopped payment on the second check. That thereafter, the defendant, C. N. [M.] Hill did call John Murphy stating that she was a partner, that she was in the hay business with Carl Jacobs and that John Murphy relied upon these representations and that by said reliance there was a partnership created by estoppel and that the defendant, C. N. [M.] Hill is responsible to plaintiff, John Murphy * * *."

ORS 68.230 provides:

"68.230 Partnership bound by admission of partner. An admission or representation made by any partner

---

[1] Defendant Jacobs, by stipulation, was held in default and a judgment was entered against him. He is not a party to this appeal and reference to defendant pertains only to Hill.

concerning partnership affairs within the scope of his authority as conferred by this chapter is evidence against the partnership."

ORS 68.280 provides:

"68.280 Partner by estoppel. (1) When a person, by words spoken or written or by conduct, represents himself, * * * as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership, and if he has made such representation * * * he is liable to such person, whether the representation has or has not been made or communicated to such person so giving credit by or with the knowledge of the apparent partner making the representation or consenting to its being made.

"(a) When a partnership liability results, he is liable as though he were an actual member of the partnership.

"(b) When no partnership liability results, he is liable jointly with the other persons, if any, so consenting to the contract or representation as to incur liability, otherwise separately.

"(2) When a person has been thus represented to be a partner in an existing partnership, or with one or more persons not actual partners, he is an agent of the persons consenting to such representation to bind them to the same extent and in the same manner as though he were a partner in fact, with respect to persons who rely upon the representation. * * *"

Although ORS 68.280 was enacted in Oregon in 1939, no Oregon cases have been cited pertaining to this section, and we have been unable to find any. The controlling question in this case is whether plaintiff relied on defendant's representation of the partnership to his detriment. 1 Rowley on Partnership (2d ed 1960), § 16.1, in discussing partnership by estoppel under the Uniform Partnership Act, states, at page 425:

"* * * It is said that when a holding out as partners has once been established, the parties are liable to one induced thereby to give credit, the ground of such

liability not being upon direct representations between the parties, but upon the principles of general policy to prevent fraud. The only means by which persons between whom there is no actual partnership can be held liable as partners is by making out a case of estoppel against them, and all the elements of estoppel must exist. * * *" (Footnotes omitted.)

"The reason for the rule of estoppel is simply to protect the creditor against acts or representations of the ostensible partner, in credit given the concern on the belief that he is dealing with the ostensible partner as well as with the other member or members of the supposed partnership, and, consequently, the rule is only applied when the creditor relies on the acts or representations, believing them to be true. If, therefore, the defendant is sought to be charged, by estoppel, with certain debts of an ostensible partnership, the creditor must show, in addition to the fact that defendant held himself out as a partner, that he, the creditor, was misled thereby, and that he acted thereon. It should be kept in mind, that the third person must rely upon the alleged estopping acts when entering into dealings with the firm, if he would rely upon these acts in enforcing partnership liability, and must have suffered a detriment because of such reliance * * *." *Id* at 432. (Footnotes omitted.)

■ We view the evidence in the light most favorable to the plaintiff. The plaintiff is entitled to the benefit of all favorable evidence and all favorable inferences which may be reasonably drawn from the evidence. *Austin v. Sisters of Charity,* 256 Or 179, 183, 470 P2d 939 (1970); *Krause v. Eugene Dodge, Inc.,* 265 Or 486, 490, 509 P2d 1199 (1973).

Plaintiff and his wife operate a ranch east of Klamath Falls where they grow oats, alfalfa and grass to sell as hay. Defendant Hill is in the trucking business. Jacobs did some ranching and truck driving and at times drove trucks for defendant Hill.

Early in 1976 Jacobs contacted plaintiff Murphy regarding the purchase of approximately 250 tons of hay, to be delivered over a period of time. It was resold and trucked to Western Concentrates in California.

[ 219 ]

The first check received by plaintiff as a down payment on the hay was in the amount of $3,700 and signed by defendant Hill. The evidence does not disclose the date of the first check. The second check received as payment was dated March 2, 1976, in the amount of $4,000 and was also signed by defendant Hill. Defendant Hill stopped payment on the $4,000 check because of disagreement with Jacobs. After the Jacobs-Hill disagreement was settled, Hill transferred $4,000 from her bank account to plaintiff in lieu of the $4,000 check on which she had stopped payment. The hay was delivered by plaintiff between February 18 and March 16, 1976. Exhibits 7 and 10 represent "weight slips" for hay delivered by plaintiff after defendant Hill stopped payment on her March 2, 1976, check of $4,000 and, according to the testimony, told plaintiff that she was "a hay partner of Carl Jacobs." These "weight slips" disclose that plaintiff delivered hay in excess of the judgment granted plaintiff after Hill stated she was Jacobs' hay partner and after credit was given for the $7,700 previously paid by the two checks. After Hill made good the $4,000 check, Jacobs gave plaintiff a $5,000 check but it was returned "NSF," leaving the balance due as testified to by plaintiff and Mrs. Murphy. Plaintiff testified:

"Q. Now, how did you deal, if you did, with C. M. Hill?

"A. The first check that we received as a down payment for $3,700 was written by C. M. Hill and the next $4,000 for hay taken out was written by C. M. Hill.

"* * * * *.

"Q. * * * Did Mrs. Hill ever talk to you concerning the hay?

"A. Yes, she called me one day on the phone on this $4,000 check.

"* * * * *.

"Q. This is the one that she made good?

"A. That's right.

"Q. What did she advise you?

"A. She said that she was Carl Jacob's partner and that there wasn't enough funds, the check was no good

[ 220 ]

and she wanted our account number in our bank so she could deposit the money to it.

"Q. Was that done?

"A. Yes, it was.

"* * * * *.

"Q. What about this first check of $3,700; you testified that was Mrs. Hill's, how did you get the check?[2]

"A. That was a down payment on the hay. We wanted a down payment in advance and that was to stay till the hay was taken out and each load of hay was to be paid for as it was taken out. At the end of the deal, that $3,700 was to be taken off.

"Q. Did you rely on the fact that Mrs. Hill had written this, the fact as far as getting money?

"A. Yes, we did.

"Q. Would you have proceeded on this situation if you had [not] gotten this first money from Mrs. Hill?

"A. No. * * *

"Q. * * * Well, did you rely on the fact that you got $3,700 from Mrs. Hill to proceed on the hay sale to Hill and Jacobs?

"A. Yes, we did.

"* * * * *.

"Q. All right. Did you deal with her [defendant Hill] also, then?

"A. At that time, yes. We thought we were dealing with both of them.

"Q. All right. Now, Mr. Murphy, we've alleged that—well, you did get $3,700 and that was taken care of and they got hay for that?

"A. Right.

"Q. Then the $4,000 check that was returned, Mrs. Hill made good and they got hay for that?

"A. Right."

Defendant Hill acknowledged that she wrote the $3,700 and $4,000 checks to plaintiff Murphy.

---

[2]Defendant Hill testified that she was with Mr. Jacobs in a pickup truck at the Murphy ranch when her $3,700 check was delivered to plaintiff.

When defendant Hill stopped payment on her $4,000 check she telephoned Mr. and Mrs. Murphy. Plaintiff Murphy testified:

"Q.   You remember exactly what she said?

"A.   Yes, she said that she was C. M. Hill and she was Carl Jacob's [sic] partner.

"Q.   Did she utter the word partner to your recollection?

"A.   Yes.

"Q.   What else did she say?

"A.   She said she had written the check for $4,000 which wasn't good."

Mrs. Murphy testified:

"Q.   Did you ever hear from any source, don't go into it, we'll find out when and where, that Carl Jacobs and C. M. Hill were partners?

"* * * * *.

"A.   Yes.

"Q.   * * * Okay, now about when?

"A.   When she called.

"Q.   When she called and 'she,' being who?

"A.   She identified herself as Cherie Hill.

"* * * * *.

"Q.   All right, and then she identified herself; what did she advise you on the telephone?

"A.    She said she was Cherie Hill and she was a hay partner of Carl Jacobs or a partner of Carl Jacobs."

■■ This is a case where there is conflicting evidence. Plaintiff and his wife testified that defendant Hill and Jacobs held themselves out as partners. Defendant Hill admitted that she was with Jacobs in a pickup truck at the plaintiff's farm when Hill's first check of $3,700 was tendered for the hay. Plaintiff and his wife testified that they relied on the defendant's representations that Jacobs and Hill were partners and extended credit accordingly, all to their detriment. Jacobs and Hill denied that they were partners, and Hill testified that she was only lending money to Jacobs. The trial court, by its findings, chose to accept plaintiff's testimony. This being an action at law tried

[ 222 ]

to the court without a jury, we must affirm the findings and judgment of the trial court, as in the case of a judgment based upon a jury verdict, if it is supported by any competent evidence. *Ruble For. Prod. v. Lancer Mob. Homes,* 269 Or 315, 317, 524 P2d 1204 (1974); *Kuzmanich v. United Fire and Casualty,* 242 Or 529, 531, 410 P2d 812 (1966). The trial court had the advantage of observing the witnesses under oath where there was conflicting evidence, and we conclude that he did not err in denying defendant Hill's motion for a directed verdict or in his findings of fact.

Affirmed.