Argued and submitted May 21, affirmed September 26, reconsideration denied December 7, 1984, petition for review denied January 22, 1985 (298 Or 553)

## FITZGIBBON et al,
*Respondents,*

*v.*

## CAREY,
*Appellant.*

## (A8101-00376; CA A28010)

688 P2d 1367

Leslie M. Roberts, Portland, argued the cause for appellant. With her on the briefs was Kell, Alterman & Runstein, Portland.

Barnes H. Ellis, Portland, argued the cause for respondents. With him on the brief were Randolph C. Foster and John M. Volkman, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

This dispute is between lawyers over the division of an attorney fees award. Plaintiffs, a partnership, and defendant, a professional corporation, associated to represent the plaintiff in a class action and other related cases. The class action was successfully prosecuted and generated $869,000 in attorney fees.[1] Defendant refused to divide the fee equally with plaintiffs on the ground that they failed to do half of the work the cases required and that an equal division of the fee would violate DR 2-107. Plaintiffs seek to compel an equal division by this action for an accounting, alleging that they associated with defendant as joint venturers. Defendant denies the allegation of joint venture and, in addition, counterclaims for contract damages on the theory that plaintiffs failed to do half of the work as agreed. The trial court, in a well-considered opinion, concluded that the legal relationship between the parties was a joint venture and accordingly ordered an equal division of the fee. Defendant appeals. We affirm.

As an initial matter, the parties disagree over this court's scope of review. What elements are necessary and sufficient to constitute a joint venture is a question of law. *Hayes v. Killinger,* 235 Or 465, 470, 385 P2d 747 (1963). Whether the evidence shows that a joint venture existed between the parties is a question of fact, *Pac. Gen. Contrs. v. Slate Const. Co.,* 196 Or 608, 623, 251 P2d 454 (1952), unless the relevant facts are not in dispute. *Preston v. State Ind. Accident Com.,* 174 Or 553, 567, 149 P2d 957 (1944). Our review of the trial court's findings of fact in an action for an accounting between joint venturers is *de novo.* ORS 19.125(3).

There is no serious disagreement between the parties over what legally constitutes a joint venture. It is essentially a partnership that is formed for the purpose of pursuing a single business transaction and therefore, so far as it is applicable, the law of partnership governs joint ventures. *Stone-Fox, Inc. v. Vandehey Development Co.,* 290 Or 779, 783, 626 P2d 1365 (1981); *Hayes v. Killinger, supra,* 235 Or at 470-71; *Preston v.*

---

[1] The case generating the fee is reported as *Derenco, Inc. v. Benj. Franklin Fed. Sav. and Loan,* 281 Or 533, 577 P2d 477, *cert den* 439 US 1051 (1978). In consideration for a promise by the defendant in that case not to appeal the award of attorney fees, the attorneys accepted $100,000 less than the amount awarded.

*State Ind. Accident Com., supra,* 174 Or at 561. Oregon has adopted the Uniform Partnership Act, ORS Chapter 68, where a "partnership" is defined as "* * * an association of two or more persons to carry on as co-owners a business for profit." ORS 68.110(1). "Business" includes pursuing a profession. ORS 68.020(2).

■ Whether express or implied, a joint venture agreement is a contract. As with other contracts, the intention of the parties is controlling. In this case, although there is no express contract between the parties, there is direct evidence of the parties' intent. Defendant wrote to plaintiffs on April 22, 1974:

> "Dear Jim and Ed:
>
> "I am sending you a copy of the notice of class action which we are today forwarding to Benj. Franklin Savings & Loan Assn.
>
> "We have been working with Gerson Goldsmith's office on the bank cases on the basis of a 50-50 division of work and any fees which may be realized down the road. I suggest that we have a similar arrangement, that is, 50 per cent for your 'firm' and 50 per cent for our firm.
>
> "I'll be glad to carry the laboring oar on the class action part. I'd appreciate it if you could prepare a draft of the complaint. I am enclosing a copy of a complaint which we recently filed for Bill Babcock against the Citizens Bank in Eugene. That complaint should readily adapt to the second cause of action.
>
> "Since the classes are different, we might want to consider filing two separate actions.
>
> "/S/ Henry A. Carey"

■ As far as it goes, the parties agree that this letter expresses the terms of their agreement. It reveals that the parties did associate to carry on a business, as that term is defined above, for profit. Whether they did so as joint venturers, or on some other basis, is also a matter of intent, *Stone-Fox, Inc. v. Vandehey Development Co., supra,* 290 Or at 783, citing *Hayes v. Killinger, supra,* 235 Or at 470, and may be demonstrated by showing joint rights of control, joint liability for losses and a right to share the profits.

■ Defendant relies on *Willis v. Crawford,* 38 Or 522, 63

P 985, 64 P 866 (1901), for the proposition that the mere fact that attorneys associate on a fee for services basis does not make them joint venturers. Defendant is partly correct. *Willis* held that sharing fees earned on certain matters of joint representation, *standing alone,* is not sufficient to prove a joint venture; but as the court also observed: "It is elementary, however, that, when the parties have so intended, a partnership may be formed for a single transaction." 38 Or at 529.

On the question of intent, a portion of defendant's testimony at trial is particularly revealing:

"Q. What was your understanding, when you started this project, as to who would make decisions of a strategic nature in the lawsuit?

"A. I don't recall any discussion.

"Q. What was your expectation?

"A. That it would be a shared thing, I guess. Without knowing what kind of decisions you are referring to, no lawyer can anticipate what you are asking for. It may be settlement, about costs.

"Q. Was it generally understood that anything of significance would be mutually discussed and agreed upon before it was done?

"A. I don't think that there was anything that formal. I don't want to testify about something I don't know.

"Q. Was that your expectation?

"A. I don't know what my expectation was at that time. The expectation, I guess I do know. It was that the relationship worked out very much the same way it had with Gerson Goldsmith, his office, Brad Littlefield.

"Q. Who makes decisions in the relationship you have with him?

"A. We made them together and sometimes had some fur flying in reaching a decision on a particular matter, but at least we planned them out and it was a joint thing.

"Q. And that was your expectation in this transaction?

"A. When I'm dealing with competent lawyers it always is, yes."

Defendant testified further:

"Q. Do you recall the first discussions and what transpired concerning the association with Mr. Fitzgibbon and Mr. Morrell in representing Derenco?

"A. I think this letter summarizes it. Fifty percent of the work. I compared it to the arrangement that I had with Gerson Goldsmith and Brad Littlefield. Ed was thoroughly familiar with that arrangement. That three-hundred-and-sixty-day-case which went to the United States Supreme Court in the banking field was a fairly prominent case and I had discussed that in some detail and Ed Fitzgibbon had been aware of it on kind of a step-by-step basis. So he knew of our working relationship and the way I was working with Gerson Goldsmith and Brad Littlefield and that was the same arrangement I was discussing here.

"I don't recall any specific discussion of costs one way or another, except that they would be shared. I assumed they were going to be shared."

■■ This testimony reveals that defendant intended and expected there to be shared decision-making and shared costs; the letter of April 22 reveals that there was to be shared work and shared profits.[2] Although defendant complains that those expectations were not fully realized, it is the intent of the parties at the time the agreement was entered into that controls their legal relationship. *Burnett v. Lemon et ux.*, 185 Or 54, 64, 199 P2d 910 (1949); *Oshatz v. Goltz,* 55 Or App 173, 176, 637 P2d 628 (1981). The trial court did not err in finding a joint venture between the parties.

■ ■ Without an agreement to the contrary, joint venturers share profits equally. *Dean Vincent, Inc. v. Russell's*

---

[2] Defendant draws a number of fine distinctions to show that this association was not a joint venture. He argues, for example, that the parties were to share the fee as a "gross receipt" rather than as a "profit." He argues that an associating attorney's right to share control over a case arises from a duty to the client rather than from any proprietary interest in the case and that the risk of losing the costs of a lawsuit is one the client, not the attorney, must run. While defendant may be technically correct on some or even all of these points, it is well settled that

"[t]he essential test in determining the existence of a partnership is whether the parties intended to establish such a relation. * * * In placing the conduct of these parties in the framework of a partnership, no one factor is absolutely determinative; the entire factual setup must be examined as a whole but when faced with the intricate transactions that arise, this court looks mainly to the right of a party to share in the profits, his liability to share losses, and the right to exert some control over the business. Those are deemed the earmarks of a partnership." *Hayes v. Killinger, supra,* 235 Or at 471.

*Realty, Inc.*, 268 Or 456, 465, 521 P2d 334 (1974); *see also Carson Admx. v. McMahan Admr.*, 215 Or 38, 332 P2d 84 (1958).[3] Defendant would have us read his letter of April 22 as a specific agreement to the contrary; that is, that each party would receive only that part of the fee proportional to the work each contributed. We think it more likely that neither party gave any thought to the possibility that one would do a disproportionate amount of work, let alone that either intended anything regarding its resolution if that problem arose. Defendant and at least one of the plaintiffs had been close friends, had jointly represented at least one other client and had each had occasion to represent the other in legal proceedings. We agree with the trial court, that

> "[t]he intention of the original agreement was that the plaintiffs and defendant would each generally equally share the work and responsibility on the cases and that each would equally share attorney fees. Each of the parties embarked on their association in good faith."

Accordingly, we reject defendant's contention that there was a specific agreement to divide the fee in direct proportion to their respective labors.

■■■ Having thus determined that plaintiffs and defendant were engaged in a joint venture without a specific agreement to divide profits in a manner other than equally, plaintiffs are entitled to an equal division unless there are "exceptional circumstances." *Dean Vincent, Inc. v. Russell's Realty, Inc., supra*, 268 Or at 468; *Rayson v. Rush*, 258 Or 315, 329, 483 P2d 73 (1971); *McIver v. Norman*, 187 Or 516, 540-42, 205 P2d 137, 213 P2d 144 (1949); *Thorson v. Bellamy*, 54 Or App 610, 635 P2d 1048 (1981) *rev den* 292 Or 568 (1982).

---

[3] In *Carson*, the court twice stated with seeming approval that the "general rule that if there be a complete absence of a specific agreement as to the division of a contingent fee between attorneys associated in the prosecution of a case, the fee is to be divided equally." 215 Or at 42. The parties in that case apparently agreed with that statement of the rule, and the only issue in the case was whether the defendant attorney had hired the plaintiff attorney, that is, whether there had been some specific agreement regarding a division of the fee or whether the general rule applied. The majority held that there was not sufficient evidence of a specific agreement and applied the general rule. Justice O'Connell dissented on the ground that the evidence did not support an inference that there was not a specific agreement; he thought that there was an agreement that the plaintiff attorney would be compensated only for the reasonable value of his services. He did not, however, disagree with the majority's statement of the general rule.

Defendant does not contend that exceptional circumstances sufficient to defeat plaintiffs' right to an equal share exist in this case.

■ Defendant next assigns error to the trial court's failure to consider in the accounting plaintiffs' failure to do half the work as agreed. Defendant argues that plaintiffs' failure to perform constitutes a breach of the joint venture agreement for which the measure of damages is an amount equal to the reasonable value of the extra work defendant had to do. This issue was raised by defendant's third affirmative answer and by its counterclaim, which prayed that the court award defendant the balance of the fee after deducting expenses and "an amount equal to the reasonable value of [plaintiffs'] work * * *." The trial court found:

> "If this Court were deciding this case on a *quantum meruit* basis, on the respective reasonable value of the services of the parties, this court, considering the actual hours expended, the quality of the work, the responsibility assumed, and the various other factors which should be considered, would divide the fees 25 percent to [plaintiffs] and 75 percent to [defendant]."

Defendant's counterclaim sounds in contract, and therefore we are bound by the trial court's findings of fact. The issue thus becomes whether, from the fact that the relative *value* of the work performed by plaintiffs was not equal to one half of the total services rendered by both parties, it follows that plaintiffs failed to perform half the work *as agreed.* We are unable to accept the inference, because the record reveals that there was no meeting of the minds between the parties about what a "50-50 division of work" would mean in practice. *See Phillips v. Johnson,* 266 Or 544, 555, 514 P2d 1337 (1973). After testifying that all the related cases would be "handled on the same basis: equal division for equal work," defendant was asked:

> "Did you at or about the time of the April 1974 letter - do you have a present recollection of specific conversations with either [plaintiff] as to a specific division of responsibility in the *Benjamin Franklin* matters?"

Defendant answered:

> "No, sir. But let me say, I have [been] asked that same question about eight or ten times in different ways and I'll

save a lot of time because I don't recall any specific conversation about that time with [plaintiffs] relating to fees."

Plaintiff Fitzgibbon, for his part, testified:

"There was no discussion of the amount of work to be done. I just assumed that the amount of work to be done was the same as we'd always done where we'd pitch in and do what we could. It didn't make any difference to me whether I would be doing more or less. I anticipated they would be making an entirely equal effort."

It is apparent from the record, as the above excerpts show, that when the parties associated neither had any idea what work would be necessary to bring the cases to a successful resolution or how that work would be allocated beyond defendant's statement that he would "take the laboring oar on the class action part." There was no specific division of responsibility for the work to be performed and, more importantly, no direct evidence that defendant thought that there was a problem until April 6, 1978, when defendant suggested that the parties should get together and discuss the question of attorney fees at an early date-nearly four years into the association and at about the same time as it appeared that success in the case was finally at hand.[4]

Considering the inherent uncertainty of the term "50-50 division of the work" in this context, and the lack of any agreement between the parties regarding its meaning, we cannot conclude that plaintiffs breached the agreement. This case is in a posture similar to *Carson Admx. v. McMahan, Admr., supra,* where both the majority and the dissent agreed that, in the absence of a specific agreement to the contrary, attorneys who associate to represent a client jointly are each entitled to half of any resultant fee. The trial court did not err in failing to consider defendant's "extra work" in the accounting between the parties.

Defendant next assigns error to the trial court's failure to interpret the association agreement consistently with Disciplinary Rule 2-107(a), which provides:

---

[4] The Oregon Supreme Court's decision in *Derenco v. Benj. Franklin Fed. Sav. and Loan, supra,* was filed on March 21, 1978.

"A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless:

"* * * * *

"(2) The division is made in proportion to the services performed and responsibility assumed by each. * * *"

In the light of the above discussion, we do not agree that the trial court erred in interpreting the agreement of the parties. However, the question remains whether the general rule that, in the absence of a specific agreement to the contrary joint venturers are entitled to equal shares of any profits realized from the venture conflicts with DR 2-107 when applied to attorneys who, while jointly representing a client, perform services of unequal values.

██ ██ DR 2-107 is intended to prevent forwarding fee agreements and their attendant evils. An attorney is not entitled to a division of fees for "services performed and responsibility assumed" when that attorney does nothing but refer a fee-generating client to another attorney without any other actual participation in or handling of the case. *See, e.g., Palmer v. Breyfogle,* 217 Kan 128, 535 P2d 955 (1975). On the other hand, when there is a "true division of services and responsibility," a specific agreement to divide a contingency fee between associating attorneys may be enforced, even though it is claimed that the division is not directly proportional to the work performed by each. *See, e.g., Breckler v. Thaler (Martinez v. County of Los Angeles),* 87 Cal App 3d 189, 161 Cal Rptr 50 (1978); *see also Burrell v. Sperry Rand Corp.,* 534 F Supp 680 (D. Mass 1982).

 We do not think that the public policy promoted by DR 2-107 is implicated by the division of a fee between these attorneys. There is no suggestion in the record that the total fee was excessive because of the parties' association. There is no question but that each party assumed active responsibility for various aspects of the cases and that each party, in fact, performed substantial services.[5] We are not persuaded that

---

[5] The trial court, when awarding the fee in the *Derenco* case, found:

"[T]his litigation has been complex, protracted, and has been prosecuted and defended vigorously and with great ingenuity, skill, and scholarship by all counsel. Plaintiff's several lawyers have pursued the plaintiff's cause with diligence

DR 2-107 was intended to require associating attorneys to correlate each minute spent on a case to each penny earned therefrom in order to achieve proportionality between "the responsibility assumed and services performed" on the one hand and each attorney's share of the fee on the other. Reading DR 2-107 to require such proportionality would negate one of the principle policies underlying joint venture law-to discourage claims between joint venturers for unequal divisions of profits. Resolving such claims requires after the fact calculations of contribution to the venture, calculations that would be exceedingly difficult to make. For these reasons we do not think that DR 2-107 was intended to permit attorneys to escape the legal consequences that ordinarily flow from pursuing a joint venture, and we conclude that, on the facts in this case, DR 2-107 does not require a different result from that produced by application of the principles of joint venture law.

Defendant's final assignment of error is that the trial court erred in finding that plaintiffs would be entitled to 25 percent of the fee if the case were decided on the basis of *quantum meruit*. In view of our conclusion that the principles of joint venture apply to this case, this assignment of error does not require discussion.

Affirmed.

---

demanded by the highest professional standard in face of the fact that any compensation those lawyers might expect was contingent upon a decree in favor of plaintiff for the payment of money by defendant * * *."