Argued and submitted October 24, 1985, reversed on appeal, affirmed on cross-appeal September 18, reconsideration denied November 1, petition for review denied December 3, 1985 (300 Or 367)

DORITY et al,
*Respondents - Cross-Appellants,*

*v.*

DRIESEL et al,
*Defendants,*

DOAN CORPORATION,
*Appellant - Cross-Respondent.*

(A8009-05001; CA A29028)

706 P2d 995

Jack L. Orchard, Portland, argued the cause for appellant - cross-respondent. With him on the briefs was Ball, Janik & Novack, Portland.

I. Franklin Hunsaker, III, Portland, argued the cause for respondents - cross-appellants. With him on the brief were James L. Knoll and Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman, Portland.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

GILLETTE, P. J.

### GILLETTE, P. J.

This case began as an action for damages for incomplete and faulty workmanship in a house. Plaintiffs assert that defendant Daon Corporation (Daon) is jointly liable with its co-defendant Driesel for breach of express and implied warranties applicable to plaintiffs' newly constructed residence. The trial court found Daon liable. That liability rests solely on the trial court's determination that Daon was a joint venturer with co-defendant Driesel, the builder of the house. Daon appeals. We reverse.

Daon developed a residential lot subdivision in Lake Oswego for construction of custom built homes. It did not undertake any residential construction on its own. In 1979, it initiated a marketing scheme for its subdivision, utilizing a "Showcase of Homes" exhibition designed to illustrate the desirability of its development. The showcase project involved six Portland area builders, including Driesel, who purchased lots from Daon and built custom homes of their own design. The homes were to be open for public viewing over a period of several months. For its part, Daon was to promote and advertise the project, decorate and furnish the model homes and provide an appropriate landscaping plan to the builders. Daon had on-site personnel to discuss lot sales with prospective purchasers, and Driesel retained his own broker for the sale of the home he was building.

While the Driesel house was under construction, plaintiffs, one of whom is a self-described real estate speculator, visited and became interested in purchasing the house. After several visits, both before and after the opening of the "Showcase of Homes", plaintiffs entered into negotiations with Driesel for the purchase of the house. All negotiations and documentation for the sale were between plaintiffs and Driesel; Daon was not represented. Many defects and incomplete items were apparent at the time of the negotiations as a result of the rush to complete the home in time for the showcase project. Driesel assured plaintiffs that those defects would be remedied before the scheduled occupancy of the house, which was to follow the close of the showcase program.

The sale was closed in July, with occupancy delayed until August, 1980. Despite his assurances, Driesel failed to

correct the remaining defects. Plaintiffs then made demand on both Daon and Driesel for completion of the home, voicing for the first time an assertion of a legal relationship between Driesel and Daon. When the defects remained uncorrected, plaintiff was forced to hire another contractor to complete the work at a cost of $20,000.

A default judgment was rendered below against Driesel for $20,000; the only issue`at trial was whether Daon was also liable to plaintiffs. The trial court found that in fact a joint venture existed between Driesel and Daon and therefore, under the law of partnership, Daon was also liable.[1]

Simply stated, a joint venture is a partnership for a single transaction, and partnership law controls joint ventures. *Stone-Fox, Inc. v. Vandehey Development Co.,* 290 Or 779, 626 P2d 1365 (1981); *Hayes v. Killenger,* 235 Or 465, 385 P2d 747 (1963). A contract of joint venture need not be express but may be implied in whole or in part from the conduct of the parties. *Dean Vincent, Inc. v. Russells Realty,* 268 Or 456, 521 P2d 334 (1974). Whether express or implied, the intent of the parties is controlling.

In *Hayes v. Killenger, supra,* 235 Or at 471, the court stated:

> "The essential test in determining the existence of a partnership is whether the parties intended to establish such a relation. Given the multiplicity of legal consequences that flow from a partnership, we should not surprise the parties into such a relationship against their will. However, a disinclination to assume the burdens of a partnership does not necessarily preclude the creation of that relationship, since the substance of legal intent rather than the actual intent may be controlling. In the absence of an express agreement codifying the relationship, the status may be inferred from the conduct of the parties in relation to themselves and to third parties."

The main earmarks of a partnership are the right of a party to share the profits and losses and the right to exert some control

---

[1] Plaintiffs' claims that the trial court's ruling can also be read to hold Daon individually liable for breach of an express warranty, without regard to the joint venture relationship. We do not agree. The pleadings and proof were all predicated on the existence of a joint venture relationship, and the trial court's finding of liability was based solely on the existence of a joint venture.

over the business. *Hayes v. Killenger, supra,* 235 Or at 471. These key issues are central to our analysis of the case at bar.

Both Daon and Driesel denied any intention of creating a joint venture relationship when entering into the showcase project. Although the "Showcase of Homes" marketing agreement between them was not an express partnership agreement, the trial court felt that, when it was considered in combination with other factors, a joint venture relationship between Driesel and Daon was inferable. The other factors included what the trial court considered to be a sharing of the benefits and potential losses from the showcase program.

Plaintiffs argue, and the trial court agreed, that shared profits for purposes of finding a joint venture were not limited to the pooling and sharing of profits from the sale of the Driesel home and Daon lots. The trial court felt that each party would benefit in its own way from the showcase program—Driesel from the promotional activities of Daon and the chance to show its product, leading to future construction jobs; Daon from having a home constructed as a demonstration of the feasibility and desirability of its development, leading to further lot sales. Conversely, each stood to lose its anticipated benefit if the other failed to fulfill its obligation to the showcase program.

The profits anticipated by Daon and Driesel to be derived from the showcase were not to be shared jointly. Rather, each was hoping to enjoy a distinct form of gain independent of that of the other. Indeed, either one might profit from the showcase while the other failed to receive any benefit at all. The fact that parties act in concert to achieve some economic objective, while relevant to the inquiry, is not enough to create a joint venture. *Hayes v. Killinger, supra,* 235 Or at 480. As stated in II Rowley and Sive, On Partnership, 476, § 52.9 (2d ed 1960):

> "Not every joint operation which results in benefit for the parties constitutes a sharing of profits which characterizes joint adventure. The profits, in whatever form earned, must be the joint property of the parties before division."

> "The chief characteristic of a joint adventure is a joint and not a several profit. Profits which are severally earned, the parties merely having dealt with the same subject matter, but

not for and on behalf of each other, do not meet this requirements of the existence of a joint adventure."

Concomitantly, any potential loss from the showcase joint effort would also be unique to each party. Daon might fail to sell more lots or Driesel might fail to obtain any future construction jobs, but the loss would not necessarily be a shared one.[2] The marketing agreement and the joint control anticipated from it—a factor also considered by the court— was a compact to cooperate, not a true agreement to share the control and decision-making of a business venture.

Those elements necessary to constitute a joint venture are matters of law; whether a joint venture exists under the evidence is a question of fact. *Fitzgibbon v. Carey,* 70 Or App 127, 688 P2d 1367, *rev den* 298 Or 553 (1985). We hold that the trial court, as a matter of law, misconstrued the nature of a joint venture and erred in its application of the law to the facts of the case at bar; there was no joint venture between Daon and Driesel.

Although we conclude that there was not a joint venture between Daon and Driesel, our review is not complete. Plaintiffs also argued that Daon should be held liable under the concept of partnership by estoppel. ORS 68.280.[3] While no mention was made of the estoppel theory or ORS 68.280 in the trial court's bench ruling, the trial judge did discuss reliance, a necessary element of estoppel. With regard to the advertising done by Daon, the trial court concluded that, "[it] would lead reasonably prudent people to the conclusion that Daon was involved in not only the development of the building site but the building of the homes."

When a partnership by estoppel arises, liability

---

[2] The fact that Daon agreed to subordinate its secured interest from the lot sale so that Driesel could obtain construction financing does not make Daon a joint venturer, as plaintiffs suggest. *Preston v. State Industrial Accident Commission,* 174 Or 553, 149 P2d 957 (1944).

[3] ORS 68.280 reads in part:

"When a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to any one, as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership * * *."

attaches to anyone who holds himself out or allows himself to be held out as a partner, thereby causing another to reasonably rely to their detriment on the representation. *Murphy v. Jacobs,* 280 Or 215, 570 P2d 371 (1977); *see C. A. Babcock Co v. Katz, et al,* 121 Or 64, 253 P 373 (1927). The representation relied on by plaintiff in the case at bar rests exclusively on the promotional and advertising activities by Daon for the showcase program. Those representations to the public did not claim that the project was a Driesel-Daon partnership. Rather, the advertising generally attempted to introduce the subdivision to the public and expound upon its unique advantages. The advertising directly relating to the showcase project indicated that several Portland area builders, including Driesel, were constructing quality, custom homes that were open for public viewing. The Daon corporate logo was affixed to the advertisements, and this fact is the nearest Daon came to holding itself out as a partner with Driesel.

Considering the severe consequences of partnership liability, the doctrine of partnership by estoppel should be applied only with great care. *See Sitchenko v. Divesta,* 512 F Supp 758 (DC NY 1981). We think the Daon advertising praising Driesel's, as well as the other builders', reputation for quality and expertise is too slim a thread upon which to hang the consequences of partnership by estoppel. General commendations for one of the participants in the showcase project are not on a par with representations of a business relationship on which persons might reasonably rely.

None of the negotiations for the sale of the Driesel house included Daon personnel. None of the sale documents refer to a Daon-Driesel partnership. There is no evidence that either Daon or Driesel ever expressly or intentionally represented themselves as being partners. We find no evidence in the record of a representation on which plaintiffs could have reasonably relied that a partnership relation between Daon and Driesel existed. Daon is not liable as a partner by estoppel.[4]

Reversed on appeal; affirmed on cross-appeal.

---

[4] Plaintiff's cross-appeal, alleging violation of the Unlawful Trade Practices Act, ORS 646.605 *et seq,* by Daon, is without merit.